Mr. Custanius? Mr. Chief Justice, and may it please the Court, for three reasons, the Patent Trial and Appeal Board is not authorized to issue final written decisions on fewer than all of the patent claims challenged by inter partes review petitioners. The first is the plain language of the statute. It requires the Board to issue a final written decision with respect to the patentability of, quote, any patent claim challenged by the petitioner. That's also supported by the context of the Act. Second, that plain and inclusive command is not the provision. Ginsburg. May I just ask you about what you just quoted? Doesn't the provision begin if an inter partes review is instituted? If it is instituted. Yes. That's exactly right, Justice Ginsburg. The statute starts with a conditional. The conditional was met in this case because an inter partes review was, in fact, instituted in this case. The second reason. It's only instituted with respect to certain claims. So I have two questions. Please. I'm not at all clear what it is you're challenging here. Are you challenging the Board's right? To initiate partial adjudications? Or are you challenging the fact that they are not addressing all of the claims in their final decision? What is it that you're actually asking us to review? Well, we are challenging the latter. Our question presented is focused on the language. So what is it exactly that you want the Board to do with respect to the claims that it didn't grant adjudication of? We believe that section 318A requires the Board. So you want them to say we didn't grant review on these claims because, or do you want them to say the patent is valid with respect to these claims that we didn't grant review? Well, I think the section is. The only power they're given is to decide the patentability of claims. So what exactly is it that you're asking them to do? Well, Justice Sotomayor, what we are asking the Board to do is to say in its final written decision that we are not finding, for example, claim 4 of the complement soft patent, as they did in this case. We are not finding that unpatentable. That way, we can then appeal that decision. Ah, you want to get around QOZO. No, I don't. That's exactly what you want to do. That's what the government says we want to do. That's not what we want to do. Well, I don't see what else you're trying to do, because what will you do? You will come up on appeal and say the Board was wrong in not instituting review of those other claims. That's what QOZO was about, us saying you can't do that. I didn't agree with QOZO. Well, I certainly understand that. But it is what we said, and so assuming I stick with precedent on this issue, what other purpose would there be for the Board basically to say we made a decision not to institute review? Well, first of all, Justice Sotomayor, if you look at what the Board actually did in saying that they were not going to institute review, the Board effectively did make a patentability determination in what it calls its initial determination. So we have a decision by the patent, the Patent Trial and Appeal Board, that is in fact ruled on the question, but because of the way they have ruled on it, we can't appeal it and it can't be a stopping. All right. You do want to get around QOZO. There is absolutely no way that that's anything other than that. What's the – if you're not challenging their decision not to institute review, why would that make any difference? Well, Justice Breyer's opinion for the Court in QOZO was very clear in saying that the determination in that case was a challenge under the Section 314a institution only. We're not challenging the Section 314a institution. What we're saying is that whatever institution means, whatever institution means when the Board says we're only instituting as to these particular claims, it doesn't take into account the fact, and this was not addressed in QOZO, that 318a, by its terms, by its text, requires a final written decision. So would the review on appeal be on the basis of a motion – like a motion to dismiss on the face of whatever you presented the Board with at the beginning? Did the Board have a reasonable basis to conclude that no reasonable basis existed to challenge the validity of that claim? No. The review would not be over the reasonable basis or not. The review would be on the question of patentability. Sotomayor, there actually is a record. I'm sorry. I didn't mean to cut you off. No, no, no. If the Board didn't institute review of those claims, there would be an incomplete record with respect to those other claims. Let's keep in mind that inter partes review is a much more streamlined process than trial court litigation, and the complaint is much more than notice. In this case, the petition that was filed here was a complete document. It laid out all of the grounds and all of the challenges to all 16 of the Complement Soft patent claims. It also included a declaration from an expert witness. If you look at the first few pages of the Joint Appendix in this case, which has the – Sotomayor, well, that's fine, but if the Board didn't institute review of those other claims, the other side has not had an opportunity to present its evidence in contravention of your expert. You're asking the appellate court to decide patentability on the basis of an incomplete, undeveloped record. Well, we'll either ask the appellate court to decide patentability or at least decide that we made a case of patentability that ought to be decided. All right. Sotomayor, so why don't you get to the first issue at all? What you really want to say is the Board shouldn't institute partial reviews. It should, if it finds, I think what you're saying is once it determines you have enough evidence to challenge one claim, it should hold a hearing on everything, because without that you can't really decide patentability in a due process way, in a fair way. So why have you limited your challenge in the way you have? What's the purpose of doing that? And what advantage does that give you? It seems to me that it's an unfair advantage to the other side. It's an unfair advantage to the system. So why don't you just argue what you really want to argue, which is I should have an opportunity to litigate all of my claims? Well, that's exactly, that is exactly our argument. We should have the opportunity to litigate them. But the statute precludes you from contesting the institution decision. Well, the statute precludes me from contesting the institution decision. But, Justice Ginsburg, I think if we could move to the regulation that the patent office issued in this case that the government was relying on, what you see in the Federal Register, at 77 Federal Register 48702, the government considered the objection that reviews ought to take place with regard to all challenged patent claims. And what you won't see in the Federal Register where the patent office took up this regulation is any reference to Section 318A. It was, that section was never considered. What we have under Section 318A is Congress saying to us and to the public that when an, when an inter partes review is instituted. And keep in mind that that's a binary point. And if it's instituted, and here it was instituted, but only on two of what? Nine out of the 16 claims. Okay. Nine out of 16. So that's, so 318 relates to when an inter partes review is instituted. It's an if-then. It's an if-then. It's a binary. If it's instituted, then we are entitled to a decision on all challenged patent  And it's. Ginsburg. If it's instituted on any one, then the decision has to be on all 16? The decision has to be on all 16, that's right. That's what Section 318 says. Even though the only one that they're examining is one. Well, that is, that is a determination by the board at the outset that we apparently have not met a burden of proof. What we end up with under the scheme that the patent office is following right now is a system whereby we were sued. We were sued in a complaint by ComplimentSoft in a complaint that alleged infringement of, and I quote the complaint, at least claims 1, 2, 3, 4, 8, and 10. We asked for review of all 16 claims because of that at least language. The patent office then only reviewed a certain number of the claims, and then in their infringement contentions, in this case, ComplimentSoft asserted every single claim in the patent against us but claim 4. And so now what we're left with is a situation whereby we are in the patent office fighting for years in the inter partes review over the patentability of 9 of the 16 claims, and then we're going to have to go back. I'm sorry. How did you do that for years? It's a year and a half. Isn't it at most? Well, the petition was filed in 2012, and then we've gone up to the Federal Circuit and now we're before this Court. But, yes, it's a year and a half at most, 3 months. It's usually a year. How long did it take here? It took the they took the maximum amount of time in this case. A year and a half or a year? A year. They did not extend the time. All right. Mr. Castanis, can I ask how your statutory argument works, given your position on canceled claims? If I understand your position on canceled claims, it's that the board need not render a decision as to those claims. Is that right? That's right. So I guess what's the difference between a canceled claim and a non-instituted claim? In other words, both were originally in the petition. Both are no longer in dispute. So with respect to the one, you say it's perfectly consistent with the statutory language that the board not render a decision. Then why not with respect to the other as well? Well, Justice Kagan, there's a world of difference between the two. A canceled claim no longer exists. We can't be sued in the district court on a canceled claim. If the denial of institution means that we have to go re-litigate that claim under the same section 102 and 103 grounds, that we would otherwise be able to challenge them in front of the patent trial. So I understand there's a practical difference. But I was looking for you, because you say that your view is commanded by the statute, and particularly, I think, by this phrase, challenged by the petitioner. But if you were right about the statutory language, that would apply to canceled claims as well. It was challenged by the petitioner in the original petition. Yes, but it's no longer challenged by the petitioner at the time of the final decision. And this one is also no longer in dispute. And it is an ex-claim. It is no longer a claim. There's nothing to adjudicate. And that's the answer, by the way. And I think what the board would say is that the same thing is true here. There's nothing to adjudicate, because they've said that it doesn't pass the threshold, so they're not in the business of adjudicating it. But it's because they've said that, and that's not what the statute says. Now, it's our position. But what language in the statute distinguishes between the canceled claim and the non-instituted claim? It is challenged by the petitioner. It actually, the word claim would work as well, because it's no longer a patent claim. It doesn't exist. But there is the chapter, the inter partes chapter of the America Invents Act, Justice Kagan, tells a really, it's a very simple, straightforward, and I would dare say elegant story. It starts by defining the scope of the inter partes review in Section 311. Section 311 is entitled inter partes review. Section 311B is entitled scope. And in that scope provision, it refers to what the petitioner in an inter partes review may request. You then move on to Section 312, which defines the requirements of a petition. What does it require the petition to identify? Among other things, each claim challenged. So now we're still at the beginning of the process, and then 314. Sotomayor Why bother requiring you to set forth all your grounds for every claim you choose to challenge? There's nothing in this forces you to challenge the claims in inter partes review. So you could choose, you could have chosen to challenge four and still gone back to district court and challenged all 16 in district court. So this was never intended to capture all litigation over validity. Oh, no, of course not. And we would never say that. So why bother requiring you to set forth all your grounds particularly if you only really have to do it with respect to one? You could take your strongest case, set forth all the grounds there, and on the other say, we also want to challenge all the other 15, because under your theory, you don't have to do anything more than that. You just have to identify one claim that's weak. The board says we'll institute review, and then you're entitled to challenge all the other claims that you didn't set forth with particularity. Because the board has to give you a hearing on those claims anyway. But, Justice Sotomayor, keep in mind that the statute invests the board with the discretion at the outset whether or not, that binary choice, whether or not to institute. And that's an important word in the statute, whether. It doesn't say whether and if so, as to which claims. It is a binary choice whether, and that's consistent. Kennedy, the board contact the parties and say we will not grant review as to all of the challenges claimed, but if you reduce it to just claims 3 and 4, we will hear it. Could the board do that? I think the board could do that and then leave the Petitioner with the election at that point to say, you know what, we think we'd rather go challenge all the claims in district court and have to pay for one proceeding rather than two. And that's really what this is about, Justice Sotomayor, to go back to your question about what do you really want. We want to have our section 102 and 103 objections to the compliments of patent heard in a single forum. Is the Patent Trial and Appeal Board more favorable for that? Sotomayor, you want that, but it doesn't mean the other side wants that. It doesn't mean that the board needs that. Well, the statute, we believe the statute says that that's what we're entitled to if there is a grant. You think it's an imperative. But just show me where anywhere in this statute the board is prohibited directly from initiation, initiating partial review of some claims or not. To the extent that we're talking about the sort of partial institution that they're doing right now, where those are not decided in the final decision, I would start with section 318A. It is assume there's not, I find that 314 permit, it has no direct prohibition of partial institution, that the board is entitled to do that, then why would we have to read the language, patent claims challenged by the Petitioner, any different than the board is reading it? The board is reading it just to mean any patent claim challenged by the Petitioner at the review stage. Justice Sotomayor, when I was engaging in colloquy with Justice Ginsburg earlier and Justice Kagan, I was talking about how the statute tells a really elegant story, and the way that the inter partes review is supposed to work. Once a petition is filed, it is that petition that is before the board. And section 314, the one that you're focused on, gives the director the discretion to institute. It's whether to institute, but it is whether to institute that petition. It's not whether to institute with regard to any particular claim. But one of the stories that the statute has written seems to tell is of great discretion to the board with respect to the institution decision. It says you never have to institute, it's your choice whether to institute, you can't get review of the institution decision, which is our Quozo case. You get to write your own rules about the institution decision, which is the rulemaking delegation. So it's a little bit odd to say, well, here's the one thing you don't have discretion over when it comes to institution. You can't say these claims, but not those claims. In a context in which Congress said the institution decision is really for the board, it's a discretionary decision that lies in its bailiwick, why should we carve out that one thing? Well, excuse me, Justice Kagan, I think I would answer your question by saying that the fact that that discretion is imposed to grant or deny, whether to grant, suggests very strongly as a textual matter that there is not a further secret grant of selective review at that point. But moreover, why should it be our choice? Why should we be the entity that picks? Well, obviously the statutory language we think supports us. The ordinary principle that the Petitioner or the Plaintiff in litigation is the master of its complaint. We, because so many of these cases follow litigation, we know best what claims we're likely to be facing in litigation. And finally, it serves exactly the two purposes that the majority opinion of the Court in Quozo identified for the inter partes review system, which is it screens out bad patents while bolstering valid ones. Well, I mean, that's one of the reasons why you don't have a lot of amicus briefs on either side in this case, is that we're actually in the position of saying, yes, we would like to be, have appellate review and be bound by an adverse decision with regard to claims that the Patent Office did not think met the standard for institution. But that's not unreasonable, particularly in this case, because as we pointed out in our reply brief on the merits, the Patent Office in this case, the Board, decided to institute review with respect to Claim 4, but not Claim 2. A Claim 4 actually is identical to Claim 2, except it contains an additional limitation. Had we been given the opportunity to say to the, to either to the Board in the process of the litigation leading up to a final decision or to the Federal Circuit on appellate review, we could have said, look, Claim 4, if it falls, Claim 2 is going to fall with it. There's no, there's no earthly reason why we should confirm this claim or reject that claim, but allow the other claim to go into it. Breyer, The Patent Office disagrees. And so, so I can't make, I think the language does actually help you. I have no doubt that the language you point to helps you. But where I run into trouble is I can't imagine how a statute is supposed to work where you objecting, say I object to ten claims. All right? Now, we look at this and say, you're going to get that grant if just one of those ten claims is reasonable likelihood you'll prevail. Okay? So you will have interparties. You will have interparties review under the first thing, 1314, as long as just one. All you have to have is one, and you will get interparties review. Breyer, It's not will get, I may get. Breyer, You may get. Okay. They say, now, it's up to the Patent Office, and the Patent Office says, yeah, one. Okay. Now, what you're saying is because there was one and nine, they're never going to review it. They think there's nothing to it. Okay? And it says that their decision not to review will not be appealed. Right? Okay. So they find one, and all of a sudden they discover they're in court and have to appeal everything on nine claims they thought made no sense. But if they find all ten are no good, then they're out of court, no way to get them in there, da, da, da. Okay? Now, that's the part I have trouble grasping, why someone would write a statute like that. Well, Justice Breyer, I think I'd start by urging you to read the statute free of the regulation. Just read the statute. I have done that. I actually have it written down. My law clerk has it here. But I grant you have a hard time keeping it all in mind. And it's hard to find in that entire statutory scheme, the language of scope, what the challenge in the petition, even the amendment. Breyer, it's hard to find anything about it. Breyer, I started by saying that I think language does favor you, but not definitely. I mean, there is a lot of opening and ambiguity here. And that's why I turned to what I was having trouble with, is trying to imagine what the purpose would be of writing a statute the way you want, though I find it very practical to think of the statute as your opponents want it. Now, that exposing my method of thinking, I'm not wet into that, but I do want to know what your answer is. Well, my answer is that I think that it makes — it's very practical to read the statute as we're reading it. And I don't think it's ambiguous at all. I think it's — I think the ambiguity is only injected by the addition of the regulation that the Patent Office has introduced into this, because you won't find a hint of partial institution anywhere in the statute, and you have some strong textual indicators against it. That's why we say that even if we were in Chevron world and even if Section 318 were the subject of a regulation, which it's not, it would still not be within the zone of reasonableness with regard to the scope of the ambiguity. But why would you write it this way? For exactly the two reasons that you wrote for the Court in Quazzo. IPR screens out bad patents while bolstering valid ones. Look at what the Board did in this case. In their institution decision, which ran 22 pages, it's not — it wasn't just a determination like the statute anticipates. It was a full written reasoned decision made in very short order after three months. The Board moved all of the work that they could have done at the end to this institution phase and said, you know, we're not going to institute with regard to Claim 2 and Claims 10 through 16. But we've still got reasoned decisions on that, but those claims haven't been bolstered, to use the words of Quazzo. And the decision by the Board to reject our arguments ought to then, if we lose, either before the Board in the final written decision or on appeal, it should establish that the Board can't stop us from relitigating those issues in the Federal courts. That was exactly the point of the Inter Partes Review statute, is to make district court litigation simpler by allowing the expert agency to do these types of adjudications. I say that with trepidation because of the first argument, but they are adjudications of a type that agencies may make, and it streamlines the patent litigation that follows. If there are no further questions, I'll reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Bond. Mr. Chief Justice, and may it please the Court. In established Inter Partes Review, Congress gave the PTO an enhanced tool to identify and revisit patent claims that it has determined may not be patentable for certain reasons, and it entrusted the agency with determining when to use that tool and how those proceedings should work in practice. Petitioners challenged to the scope of the final written decision here its argument that it should have included more claims in the final written decision fails because the PTO or the Board here, as under delegated authority, validly determined not to institute on those claims. They were never part of the instituted proceeding, and there's nothing in the statute that requires the Board to institute or to include in its final decision claims that were never part of the proceeding in the first place. Now, the crux of this dispute is, as I think the prior colloquy illustrated, over the partial institution decision. The Board's partial institution decision here to institute review except as to claims 2 and 11 through 16 is not reviewable under Section 314d and this Court's decision in Quoso, and in any event, it reflects a permissible exercise of the broad discretion conferred on the Board by the statute.  So it's actually not clear that Claim 4 is narrower than Claim 2. As we explained in the briefing in the Court of Appeals, it's possible that Claim 4 is actually broader in some respects. That's a close dispute that the Board in its discretion determined Claim 4 presents a close question, Claim 2 does not, as presented to us, present a close question. Well, that doesn't seem to me, I mean, I know we don't have review of the decision which claims to review, it doesn't seem to me like very helpful in terms of what the whole process was supposed to accomplish. So we think Congress vested the Board with discretion of deciding in what circumstances claims are closely enough related that granting a review on one implies that it makes sense to grant a claim on a related claim, or grant review on a related claim because they're so closely related. Here the Board determined that the request for review on Claim 2 failed because the petition failed at the threshold. It didn't identify specific references in the prior art that rendered Claim 2 obvious over the prior art. With respect to Claim 4, the petition had made a closer showing. That's a function of the petition. Kennedy, Well, why couldn't the Board just say we decline to grant it unless you reduce the unless you eliminate this claim? So we think the Board could do that, and we think that the Board has that authority to say we're denying review across the Board, but we, and on Petitioner's view, I think that he conceded the method. Kennedy, Well, I can rule against you, and there's no real problem. We could deny review across the Board, but if you tailor your petition, we could grant review in that circumstance. But that, we think, illustrates the artificiality of the Petitioner's position, that the Board could get to the same result just through a more cumbersome multistage process of saying we're not going to grant it this way, but if you revise and resubmit, we will then entertain your challenge. Here we understand that Congress declined to grant it. Kennedy, Well, it doesn't, because the challengers might say in that event we'll just go to the district court, we don't want, we don't want it. Sure, and they couldn't do that in this instance. A challenger here who's dissatisfied with the Board's decision about the scope of review can say, you know what, it's not worth our time, we can settle with the patent owner our, our IPR dispute, we can agree not to pursue it, and can proceed in litigation. And if, as in this case, the alleged infringer was sued in a district court infringement case and then brings an IPR proceeding, there's no stay of the district court proceeding, at least mandated by the statute, so they can proceed in the district court to litigate as they already had been doing. Roberts I thought roughly half of the proceedings were stayed. As a matter of the district court's discretion, I think a little over 50 percent of contested stay motions are granted. But, of course, if it's the alleged infringer who went to the IPR or went to the PTO to ask for an IPR and then says, look, I'm done with IPR, they wouldn't grant review on the claims that I would like, they can go back to the district court and say, I no longer want to proceed to litigate this here in this infringement suit. And so we think that the statute is perfectly consistent with inter partes review being conducted on a partial institution basis, and at a minimum, as I think was discussed earlier, no provision of the statute clearly prohibits what the, what the PTO is doing here. Alito Well, what about 318A? If we look at that by itself, where is there any ambiguity? If an inter partes review is instituted and not dismissed under this chapter, the patent trial and appeal board shall issue a final decision with respect to the patentability of any patent claim challenged by the Petitioner, what is ambiguous about that? So a couple of things. First, we'd say, as Petitioner invited the Court to do, read through the statute sequentially. We set it forth starting at page 11a of our brief in the appendix. Read through and see what Well, that really wasn't my question. If we look at that language by itself, where is there ambiguity? Sure. If you look at the four words challenged by the Petitioner in isolation, they don't answer any of the questions about the scope of what we mean by challenged by the Petitioner. So if you look at those four words in isolation, they don't tell you standing alone, challenged in an IPR proceeding or this IPR proceeding as distinct from in an infringement suit where you also challenged them. It also doesn't tell you challenged on a ground permitted with the IPR. Roberts, you think that is a serious interpretation of this challenge. They challenged it in a discussion in their office. They challenged it in a discussion in a bar. It means challenged in this proceeding. What else could it mean? Well, you know that because of context. It also means challenged on a ground within IPR, challenged timely and challenged by a Petitioner who is not stopped from doing so. And the reason that question isn't hard is because of the context of the statute, including the opening clause that takes as its starting premise. You think it's not hard? We think that's not a hard question at least? No, we think what's not difficult is the question you pose or the question that I suggested of we know that they mean challenged in an IPR proceeding and in this IPR proceeding. That question we don't think is difficult because of the context, because of the opening clause referring to if an IPR proceeding is instituted, we are referring to that IPR proceeding. And it is how you would read it and don't just agree with me because it sounds as if I agree with you. I just want to know what you don't get me off on a mistake, if it is. If an inter partes review is instituted, any patent claim that is the subject of that inter partes review, challenged by. In other words, it is understood that the word patent claim refers to a claim that inter partes review has been granted in respect to. Is that right or wrong? We think that's essentially right. I would say that another way of framing it is challenged by the Petitioner implicitly within the instituted proceeding referred to in the opening clause. So I think we're saying. That's more of a stretch from the – it's a fairly complicated and refined stretch of any claim challenged by the Petitioner. So we think it's actually consistent with ordinary usage to say at the merits phase of a discretionary review proceeding that when you say challenged by the Petitioner, you mean within the merits phase that the opening clause presupposes has taken place. When this Court grants Certiorari a. Breyer, I put it my way, because the word any is like exhibit number one for a word, the scope of which is very often ambiguous in a statute. If you can eat any fish, you can eat any fish. Think about that one. All right. Now, my point is we have loads of statutes where the word any has a scope, and the scope is determined by the context of the statute. And so what I'm thinking in the back of my mind is this is one of those that, as I say, don't let me get off on a wrong foot. So we do agree that any encompasses anything within the scope that the context of 318a and its broader context of the scheme encompasses. So it's any claim within the instituted proceeding. But just focusing on that word any, I think it's actually helpful to look past the language the Petitioner quotes to the end of 318a. It says any patent claim challenged by the Petitioner and any new claim added under section 316d. What any is doing here is not saying this is an all-encompassing review provision that requires the final written decision to encompass anything in the universe. It's doing something much more limited. The tail end of this sentence in section 318a is simply clarifying that when you get to the final decision, there are two kinds of things the Board needs to address. It needs to address those claims that were actually challenged within the instituted IPR, if there are any left, and it needs to address any substitute claims added by amendment or proposed to be added by amendment under 316d, if there are any. Alitoso, if Congress wanted to say what you think this means, why in the world would they phrase it the way it is phrased in 318a? Why wouldn't they say with respect to the patentability of any claim found by the director to have at least some likelihood of success, or any claim on which review was granted? Why in the world would they say any patent claim challenged by the Petitioner? Well, two points, Your Honor. There are several things that can cause a claim not to be in the case by the end. One is that the fact that the PTO or the PTAB undelegated authority didn't institute as one, but also canceled claims, and also settled claims. Parties can settle not just the entire dispute, but also their dispute over individual claims. Any of those things would mean that the claim is no longer challenged by the Petitioner at the time of the final decision. Breyer, it doesn't actually have to mean that. I just thought there's another tack here, that if you're voting in Congress on this, you actually don't know what you think of in respect to the answer to the question we are now litigating. And since you don't know the best answer from the point of view of the agency, you use a word like any and any claim, as I say, filled with ambiguity, so that the agency can decide which way it wants to go. Is there any indication of that? So we do think that Congress indeed left these matters to the agency in 316a. It's just like the question that was presented in Quozo. No statutory provision in Quozo specifically addressed the claim construction standard. Roberts. Roberts. So you're saying, if I understand your answer to Justice Breyer, that Congress deliberately adopted an ambiguous term in the statute so that the agency would determine what it meant. It's one thing to say, you know, the agency should determine which patent claims challenged, it will decide, or that which ones that aren't decided will be considered. It's another thing to say, let's pick a word that's so vague that nobody will be able to figure it out and we'll leave it to the commission. No, and let me be clear. Our point is not that Congress enacted on purpose a deliberately ambiguous statute. Our point is that the statute Congress enacted is consistent with partial institution, but to the extent there's a question about that, Congress left those questions to the agency. Well, there is one very telling sign that the any patent claim challenged by the Petitioner has a different meaning, and that's in 314 itself, which says claims challenged in the petition. If Congress intended claims challenged in the petition to be a part of 318, it could have used exactly the same words. That's exactly right. And that, I think, is the second answer to Justice Alito's question. The reason to think that Congress intended this result is that Congress used this very phrase that would encompass Petitioner's position in a different phrase of the statute. Do you think challenged by the Petitioner is narrower than any change, any patent claim challenged by the Petitioner is narrower than the words that are used in 314? So we think it is narrower in the circumstance for the same reason that Petitioner does, that it includes the possibility that claims will drop out along the way. And again, challenged by the Petitioner standing alone is capaciously broad and could encompass any number of things. It's context that tells you that it's narrower. But doesn't that exactly work the other way around? Of course, by the end, you're only going to resolve the challenges that remain pending. When you're doing the institution decision of interpartisan review, you're going to look at the petition. Couldn't it be just that simple? And doesn't 314 kind of cut against the government in some ways, too, by suggesting that all the PTO needs to do is decide whether there is one claim that isn't frivolous? That's the sum total of its job under the plain terms. And that beyond that, it need not go further. So two points. First, we agree that 314 is focused on the institution phase and therefore the focus is on the petition. Right. Whereas in 318, it's what's left. Right. It's what's left of the proceeding. So that's why there's a difference in language there, you agree? Right, exactly. And we think that that underscores that what's left can include the fact that. But how then do we deal with the fact that in 314, we have all the PTO has to do is decide whether there's one non-frivolous claim? It's a thumbs-up or a thumbs-down decision. Because.  Well, two points, Your Honor. First, what Congress included there is simply a floor. It's phrased as a prohibition that the PTO on delegated authority of the board may not institute unless it finds that at least one of the claims has a reasonable likelihood of being found invalid. It doesn't say that the board must therefore institute or must do an up or down determination. We think that leaves room for the board to say we can't institute if we don't find at least one, but you know what, we're going to conserve our resources as 316b tells us in adopting regulations and focus them on the claim. Help me out with 316, then, if that's where you're going to go to. Where do you see the authority for the regulations that the Director has prescribed here? Sure. They're in two provisions. Principally, 316a4, which was the same provision as at issue in Quozo. Now, a4, my problem with that, where I get stuck is that the a4 concerns establishing and governing inter partes review, and we're not at that stage yet. We're at the decision whether to institute inter partes review. Sure. I would have thought you'd had to look to a2 rather than a4. Right. So a2 is the second provision, but we do think that a4 encompasses this because it's establishing and governing inter partes review, and the board's determination whether to institute on a particular claim is part of that universe of things that was granted to the board. But certainly also a2, because that establishes or gives the board authority to establish rules that govern the showing of sufficiency that needs to be made. This is on 17a of the Gray Paper Amendment. I'd agree with you. You've given great discussion on the standards for showing sufficient grounds to institute a review. I'm not sure, I guess, you can help me on how that also includes the authority whether to grant review of this or that claim, the weeding out process. I can see how it might affect the reasonable likelihood inquiry and how the Director is going to go about doing that, but I guess it's a little less clear to me how it also grants him authority or her authority to decide which claims to proceed with. Sure. Well, what it says is the standards for showing of sufficient grounds, and those standards for showing sufficient grounds, that's in a2. And what the board's regulation is doing is preserving the board's ability to assess sufficiency on a claim-by-claim basis. We think that's encompassed within a2. But 3014a seems to prescribe that question, at least with respect to one claim. It speaks to that very issue. Well, it sets a floor, just like the outer time limits that Congress required in 316a11, set an outer time limit, but don't preclude the board from setting a lower time limit on the completion of the final written decision. The same, we think, is true of 316 or 314a. It said you may not institute unless at least one of these claims you conclude is worthwhile because it clears that reasonable likelihood threshold. But especially in the context of the scheme that gives the board complete discretion to deny review entirely, we think it's improbable that Congress would have tied the board's hands in this one respect. Moreover, not just to say you don't have discretion. Alito, is there an inconsistency with 304 where you're allowed, the director gets to decide which questions specifically the director wants to take up? There seems to be an express grant to the director there to do exactly what you want to do here. And is its absence here suggestive? We don't think so, Your Honor. I think the scheme of ex parte reexamination is fundamentally different in that it's a party just suggesting to the board or the board on its own initiative saying we're going to look at a particular substantial new question of patentability that has been raised and we'll look at which particular claims we think are implicated by that. And if it's just claims in 304, it's questions, and so the director can pick and choose which questions and is granted that express authority. And normally we think that when it's granted in one place but not clearly granted in the other, that that intends a difference. So at a minimum, that difference doesn't clearly preclude the board here under 314d and its regulatory authority from saying we're going to treat this as a floor, that we are told by Congress we can't do it unless we clear this floor, but we're going to hold patents or IPR petitions to a higher standard and evaluate them claim by claim, because that's consistent with the purpose, as Congress told us, in 316b to consider in adopting our regulations. And those purposes boil down to, as the Court underscored in Quozo, making sure we're actually improving patent quality and doing so efficiently. Now, the board's partial institution approach is perfectly consistent with both of those aims. It focuses its energies on those patent claims it determines actually have a reasonable likelihood of being invalidated without wasting time on other claims. The Petitioner's all-or-nothing approach puts the board to an untenable choice. Either it wastes time on claims it's already determined don't have a reasonable likelihood of being invalidated, at least based on the arguments presented in the petition, or it doesn't use this new tool at all and all of the work of creating inter partes review was for nothing. And so in either event, we're not getting the benefit or achieving either of the goals that Congress had in mind. And in the other case, the board is not going to be able to do that. Alitoso, is there anything in the statute that would prevent the board, if it is required to render a final decision on all claims initially challenged by the Petitioner from instituting a streamlined procedure for dealing with the claims that were found at the outset to have no likelihood of success? Why does it need to go through a full proceeding with respect to those claims? Can't it not just say in a summary form, we found that these have no likelihood of success? And then that could be appealed to the Federal Circuit and the Federal Circuit could decide whether that determination was permissible. So a couple of points, Your Honor. First, at the institution phase, the board is not deciding the merits. It is deciding not to decide the merits. It is saying, you haven't for some reason made a sufficient showing to make us convinced that it is worth our time to investigate the merits of your claim. They can also deny, however, for additional reasons irrespective of the merits. They might say, just as all agree, they can deny the petition entirely apart from the merits. They might say, this patent claim is going to be very time consuming and is not going to advance the goals of the statute, so we're going to deny review on that ground. So there's not necessarily a ruling on the merits at all, and it's fundamentally different than a district court, say, folding in a 12b-6 or summary judgment ruling, because it's based on the agency's discretion, not just the merits. Kagan, Or couldn't the agency at that point say, you know, the ground on which you charge this patent is invalid is not a ground we can review at this time? Right, exactly right. They could as well say that you've challenged this on 112 under indefiniteness or under section 101 and it's a law of nature challenge and that's not properly presented to us. They could say on those grounds, or you are a stop and we're not going to consider those concerns. And then it would seem, I mean, that would be a strange kind of thing to say, well, you can't challenge on that ground, but we're going to issue a decision as to patentability. Exactly right. So you're forced with either the PT or the PTAB either deciding we're not going to review this ground and then that gets baked into the final decision and treated as a merits ruling, which can then be appealed to the Federal Circuit and create circumvention or quoso, or you're forcing the board to decide the merits, notwithstanding the fact that it didn't institute review, didn't get submissions from the parties at the merits stage, and didn't apply the different standards that apply at the merits stage of IPR proceedings. It didn't institute review, but it issued a quite lengthy decision on addressing the issues, right? It issued a lengthy decision, about half as long as the final decision, but they're different in kind. And I'd like to emphasize a few ways that they differ. So, importantly, when the board denies review, it often is denying review for some threshold reason based on a failing in the petition presented to it, not deciding patentability at the end. So a good example here is at Petition Appendix page 115a to 116a, where the board denies institution of claims 11 through 16. Those claims are what are known as means plus function claims, where under section 1112f, or 112f, their meaning is determined by a particular structure set forth in the specification, not in the claim itself. Accordingly, the board's regulations, and this is 42.104, require a petition for inter partes review to identify what structure do you think determines the construction of this claim so that we, the board, can determine if it's unpatentable. The board said at 115, the petition didn't identify what structure it was that the petitioner thought informed the construction or the interpretation of these claims. So a for surei, we can't determine patentability based on your submission. Roberts How often does it issue decisions, written decisions, at the stage of determining whether to institute inter partes review? Panner So I don't have statistics on how frequently it issues decisions of this kind. We think it is the board's ordinary practice, and we think for two reasons that is actually a good practice that the board, in its discretion, has adopted. It's helpful for the board itself, because if the board institutes review, it then the judges of the panel or whatever panel is assigned to it, then have a very short window set by statute to determine the merits of this proceeding after the administrative trial is complete. And second, it's beneficial for the parties to this case and other cases to know what it is the board is looking for in this relatively new statutory scheme when it institutes review and exercises its discretion. That discussion at page 115a of the petition appendix is illustrative. It shows other parties in the future. If you actually don't follow our rule and include the kind of structure that we say you must, because 112f requires us to look at that in construing the claim, we are unlikely to grant review on your petition. That's instructive to the bar and the patent bar and to the patent community to know how this is. Sotomayor, I thought that that was the very reason given by the board in encouraging these kinds of opinions to be written. That's precisely right, that it's useful to the patent bar and useful to the community to know. So the patent board basically told the public, we're issuing these decisions for educational purposes. That's right. To educate the public and the patent bar and also itself and its panels on what the nature of this suit is or what this dispute is and what it looks for in the future. But in any event, even if the patent, even if the board could adopt a more efficient method of partial institution, we think that's beside the point of the question presented to you today. Whether the board could achieve more efficient partial institution with a thumbs up or thumbs down is not a reason for the board to jettison that system entirely and adopt this much more inefficient approach where it lacks discretion over the one thing that is common to patent law. The default rule in patent law is that claims are evaluated independently. In litigation, each claim is independently presumed valid under Section 282. It would be highly incongruous for Congress to say when the expert agency is reviewing patents it has issued, it lacks discretion to constrain the scope of its review and lacks discretion to do what is ordinarily the rule in patent law. And indeed, the rule in discretionary review generally, we're not aware of any context in which a tribunal vested with discretionary review authority is put to this choice of reviewing all the time. Roberts. What do we say about our last argument where a lot of our attention focused on Congress's putative intention to want to move things to an expert agency and speed things along, make it more efficient? Could that be a reason here why Congress might have wanted the Patent Office to review any and issue a final decision on any and all claims brought to it? So two points. We don't think that it would be more efficient in a sense of making things go faster if the court was. No, surely not necessarily efficient from the PTO's perspective, but efficient from the economy's perspective. So then two points on the economy benefit point. It's not going to benefit the economy first if the PTO is put to a choice between not instituting review at all, that is, no benefit to the economy, or spinning its wheels on claims in a patent. But it could do what Justice Kennedy said. That would, everybody agrees, would remain an available choice. It could indeed do that, and that, we think, highlights that this is consistent with Congress's goals. If it could achieve the same result in two more cumbersome steps, it makes sense that Congress did not intend to preclude it from doing so through this natural Well, it would require consent by the litigant in that case, whereas here, if the Would it be crazy to suppose that Congress might have wanted that as a way to achieve maximum efficiency through this administrative process from the economy's perspective? We don't think the consent issue is fundamentally different, because if a Petitioner, again, comes in and says, I want IPR on claims 1 through 10, and the Board says, we'll give you IPR on 1 through 5, the Petitioner can, in effect, walk away if they can just simply agree with the patent owner to say, look, we drop our IPR challenge. I'll go back to the infringement suit where you sued me and presumably want to litigate, and we'll litigate that there. That's permitted under Section 317. Now, to be sure, the Board at that point can proceed to adjudicate in its own – within its own proceeding the underlying claims, but that has nothing to do with the rights or consent of the parties inter se. And I think the underlying question here is, isn't this meant as a substitute for litigation? And we think the statute itself makes clear that that's not the design of inter partis review. The limited scope, so it's limited to 102 and 103, it's limited to particular prior art, and it's limited only to particular claims that this Petitioner brings to the PTO. It can't be viewed as a substitute for litigation such that someone could reasonably look at the scheme and say Congress wanted all of these claims decided either in one form or the other. It's baked into the scheme that there will be this potential for some claims to be reviewed by the PTO and others in court. And partial institution actually enhances the efficiency and harmonious working of these two things, because the Board can say, look, you've got a solid challenge on claim number one, we will review that. The rest of them we don't think have met our standard or we exercise our discretion not to review them. We're releasing those to the district court so the district court litigation can proceed and we'll deal with this one and the district court can decide what to do. Petitioner's position, by contrast, creates, I think, an incentive at least for parties to seek to tie up district court litigation by seeking IPR. And the example we gave in, I think, page 39 and 40 of our brief is where an entity sued for infringement can then, on a strong patent claim, can take that claim to IPR, add on some weak and vulnerable claims, and ask the PTO to grant review. If the Board's only choice is to grant all or nothing and it grants all, then the district court is very likely, we think, at least there's a possibility that it will stay the district court litigation and the alleged infringer has effectively slowed down the district court litigation over claims that have nothing to do with that suit. That possibility, we think, is inherent in Petitioner's approach that puts the agency to that kind of choice. Whereas you're relying at all on the notion that this entire interparty's scheme is to give the agency a chance to take a second look to correct its error. Therefore, it should not be the Petitioner who controls what the agency will consider. Yes, Your Honor. And I think that that's an important feature of interparty's review, that this notion of master of the complaint just doesn't translate here. One, because section 311B doesn't say you may get review of anything you want, but you may get review only of these kinds of things, but more fundamentally, because the point of this scheme is to give the agency an opportunity to reconsider decisions in the form of patent claims that's previously issued, it doesn't make any sense to give the Board complete discretion. It can still do that through ex parte proceedings, reviewability on its own any time, right? Ex parte. Those still exist. They do still exist. They have a different standard and Congress thought that wasn't sufficient and adopted this additional mechanism. And so Congress, in giving the agency authority and discretion to deny review entirely, and so much discretion over the way these proceedings work, we think it's simply improbable that Congress would have given the agency all the discretion except over the scope of which claims it will institute, and particularly given that the background rule of patent law is that it will examine claims one by one. If there are no further questions, we ask the Court to close. Thank you, counsel. Mr. Castanis, four minutes. Thank you, Mr. Chief Justice. I have three specific responses to points made by my friend, and then four broader points that I hope I'll be able to get in in my limited time. Justice Kagan, your colloquy with my friend here was about 101 and 112. That's answered by the scope provision of Section 311B. That limits inter partes reviews to 102 and 103 challenges in the first instance. Mr. Chief Justice, you had a colloquy with my friend about the lengthy decision that was entered at the institution phase here. And my friend responded to you that this was a failure to follow the rules of the tribunal. This was a merits decision that was made. It said that we had failed to show the corresponding structure, which is a requirement of the law under Section 112.6. And if we had had a challenge to that that we wanted to appeal, we should have been able to have that finalized, it be a stopping, and also appealable for us. Justice Sotomayor, you asked the question about what the education purpose is of the institution decision. Our point is that education can come from an appealable and a stopping decision. Now, the broader points. Justice Breyer, you, in your colloquy with my friend, rewrote the statute for him to get to the place he wanted to go. You said the statute should be read as any patent claim that is the subject of inter partes review and. That's not what the statute says. Breyer, I just mentioned that the word any is ambiguous. Well, it's only ambiguous absent context. And as we showed the Rosenwasser case, when you have shall and any in the same way that that minimum wage statute was worded. Any here doesn't mean you may have any vegetable on the menu. It doesn't, that obviously doesn't mean you can, you must have everything. It's just ambiguous in between whether they're referring to a claim in which it has been granted or whether they're referring to any claim in the petition. Well, ambiguous as to between those two things, it seemed. And that is where, Justice Breyer, this Court's decision in Utility Air that made it clear that a statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme, because only one of the permissible meanings produces a substantive effect. Sotomayor, you talked about canceled claims. How about settled claims? Say in the middle of the proceedings you settle a claim. Under your theory, the Board would still have to address that? I think that if we are saying we are no longer challenging that, that's no longer a claim challenged by the Petitioner. The settlement presumably – But it's in the petition. What gives you a right to drop it? Because the language of 318a is by the Petitioner, and that's what the context tells us about that. I understand that this is your argument for why there has to be a final decision with respect to every claim challenged by, you know, however you – but you're still saying that you're not challenging the partial institution, is that right? And I guess here's my question. What language says that partial institution is not permissible? The fact that the Board has already given the discretion whether to institute. The discretion whether to institute does not hide inside it a secret second level of discretion to decide to institute anything other than the petition. I think I'm not understanding. Could you just point me to the language that you're saying? That's the thing that's in the handbook. It's in section – it's in section 314b, timing, and it says the director shall determine whether to institute an inter partes review. And we say that's a binary choice, and we say that's consistent with the if-then language of section 318. To Justice Gorsuch's colloquy with my friend, there is no interpretation here, no evaluation at all, even in the institution regulation. Of section 318a. So I don't know what we're possibly deferring to here with regard to the language of section 318a. The section 314a didn't address it. The section 314a regulation didn't address it in the Federal Register. And as you pointed out, Justice Gorsuch, a)(2 talks about grounds to institute. It's not a weeding out function and it's not a final written decision regulation. On reviewability, our yellow brief I think tells the tale. This is not the same section. And it is — it certainly would be, in the words of Justice Alito, shenanigans if the Board is allowed to fail to follow the regulation here. Roberts. I thought you were being overly ambitious when you said you get to four points and remodeled that. Thank you, counsel. My last point was efficiency, Your Honor. Thank you. The case is submitted.